### UNITED STATES v. SCOTT & WEST et al.

(Circuit Court, D. Massachusetts. July 27, 1908.)

No. 312 (1,756).

1. CUSTOMS DUTIES—CLASSIFICATION—PLANK LINOLEUM—"LINOLEUM ● ● ● FIGURED OR PLAIN"—"INLAID LINOLEUM."

Plank linoleum, made by running upon the burlap foundation paste of two colors in stripes of equal width, a process differing from that employed in making inlaid linoleum, is, under Tariff Act July 24, 1897, c.

11, § 1, Schedule J, par. 337, 30 Stat. 180 (U. S. Comp. St. 1901, p. 1662), dutiable as "linoleum * * * figured or plain," rather than as "inlaid linoleum."

2. WORDS AND PHRASES—"PLANK LINOLEUM."

"Plank linoleum" is made by running upon the burlap paste of two colors in stripes of equal width. The paste is prevented by machinery from mixing, and establishes between the stripes a fairly definite line. Pressure follows immediately upon the application of the paste to the burlap. The effect produced somewhat resembles a floor laid in alternate planks of different woods.

On Application for Review of a Decision by the Board of United States General Appraisers.

William H. Garland, Asst. U. S. Atty.

Kammerlohr & Duffy (Joseph G. Kammerlohr, of counsel), for importers.

LOWELL, Circuit Judge. This was an appeal by the United States from a decision of the Board of General Appraisers, G. A. 6633 (T. D. 28,291), holding the importation to be dutiable under the first clause of paragraph 337 of the Dingley act (Act July 24, 1897, c. 11, § 1, Schedule J, 30 Stat. 180 [U. S. Comp. St. 1901, p. 1662]). That paragraph reads as follows:

"Oilcloth for floors, stamped, painted, or printed, including linoleum or corticene, figured or plain, and all other oilcloth (except silk oilcloth) under twelve feet in width not specially provided for herein, eight cents per square yard and fifteen per centum ad valorem; oilcloth for floors and linoleum or corticene, twelve feet and over in width; inlaid linoleum or corticene, and cork carpets, twenty cents per square yard and twenty per centum ad valorem; waterproof cloth, composed of cotton or other vegetable fiber, whether composed in part of india-rubber or otherwise, ten cents per square yard and twenty per centum ad valorem."

For earlier acts, see 22 Stat. 507; 26 Stat. 593; 28 Stat. 529.

The United States contends that the linoleum in question was "inlaid" within the meaning of the paragraph. The Board of General Appraisers reversed the decision of the collector, who held that the importation was dutiable as inlaid linoleum.

From the evidence it appears that, at the time of the passage of the Dingley act, three kinds of linoleum were commonly known in the trade:

(1) Plain linoleum, made by pressing a paste of uniform color upon the burlap which constitutes the back of all linoleum.

(2) Printed linoleum, upon which the desired pattern was printed.

(3) Inlaid linoleum, in which the pattern was produced by laying upon the burlap differently colored pastes according to the pattern desired, the same being forced into the burlap by pressure, as above stated. These differently colored pastes were laid upon the burlap in one of two ways: (a) By cutting out the figure from the previously applied background, and filling the holes thus made with the desired color; or (b) by applying the several colors to the burlap with a stencil.

Since the passage of the act at least two other sorts of linoleum have become common in the trade, viz.:

(4) "Granite linoleum," in which the paste contains masses or spots of different colors, which colors remain separate in the completed fabric. The assemblage and relation of these variously colored spots and masses is, however, casual. Granite linoleum must have been known in 1897, but seems not to have been common at that time. It has been held to be subject to the lower rate of duty by the decision of the Circuit Court of Appeals in United States v. Hunter & Whitcomb, 127 Fed. 1022, 61 C. C. A. 270, affirming (C. C.) 121 Fed. 207.

(5) The goods here in question, which are known as "plank linoleum," "oak plank linoleum," and, according to the testimony of some of the government's witnesses, "plank inlaid linoleum." The material is made by running upon the .burlap paste of two colors in stripes of equal width. A machine, unknown to the art before 1897, prevents the pastes from mixing, and establishes between the stripes a fairly definite line. Pressure follows immediately upon the application of the paste to the burlap. The fact that each of the two sorts of paste employed is not altogether uniform in color, but is somewhat mottled, is immaterial in the case at bar. The effect produced somewhat resembles a floor laid in alternate planks of different woods.

The manufacture of the goods in question is not that used in making plain, printed, or inlaid linoleum at the time of the passage of the Dingley act, nor is it that used in the making of granite linoleum either before or afterwards. The United States has not shown that the importation is "inlaid linoleum" with respect to its method of manufacture.

The United States has sought to show a commercial designation of the importation as "inlaid plank linoleum." Three witnesses have testified to this effect. One of them is a domestic manufacturer, somewhat interested in the issue of this case. Another described the article as "plank linoleum" before the beginning of this controversy, but has since styled, not only the goods in question, but even granite linoleum, as "inlaid." Most of the importers' witnesses are themselves importers or otherwise interested more or less in the controversy. Upon the whole, however, their evidence appears to me more weighty, and I do not think the government has made out a commercial designation of the importation as "inlaid linoleum" or "inlaid plank linoleum."

It is to be observed, furthermore, that the cost of the goods in question is little, if at all, greater than that of granite linoleum, and is considerably less than that of linoleum admitted to be inlaid. Until recently the goods in question have been assessed for duty at the lower rate, so that the decision of the Board of General Appraisers must be taken as upholding the departmental practice, rather than reversing it. It is true that most of the testimony now before the court has been taken since the decision of the Board of General Appraisers; but, on the whole, the government appears to me to have failed to show that the importation is inlaid linoleum. That it is dutiable under some part of paragraph 337 I cannot doubt, and I therefore hold that the Board of General Appraisers was right.